UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

Plaintiff,

v.

D-2 NOLAN DASGUPTA-FRANCIS,

Defendant.
_______________________________/

Case No.: 21-cr-20036

HON. LAURIE J. MICHELSON

**United States' Amended Sentencing Memorandum**

According to the Michigan Department of Corrections (MDOC) website, after being sentenced to serve two to fifteen years of imprisonment, defendant Dasgupta-Francis was paroled on June 4, 2019. In less than two years after being released, and while on parole, defendant committed the instant offense.

For the reasons stated in this memorandum, and because of the recidivist behavior of defendant Dasgupta-Francis, the government recommends a sentence of 57 months' imprisonment, the bottom of the determined guidelines range, as "sufficient, but not greater than necessary, to comply with the purposes of 18 U.S.C. § 3553(a)." *United States v. Vowell*, 516 F.3d 503, 512 (6th Cir. 2008) (internal quotation marks and citations omitted).

## I. Facts and Procedural History

### A. The instant offense on December 8, 2020

On December 8, 2020, at about 6:52 p.m., as captured on the police squad car dash cam video, a white Maserati car was driving at night with its lights off.




Royal Oak Police activated their overhead lights and pulled the car over for the traffic infraction. The driver/chauffer was Mr. A.M (a/k/a "Crave"). Defendant Nolan Dasgupta-Francis (a/k/a "NOLO") was seated in the rear behind the driver and co-defendant Marcellus Wallace was seated next to him and behind the front passenger's seat.




During the stop, police noticed red plastic cups in the cupholder near the driver. Suspecting the driver, Mr. A.M. (a/k/a "Crave"), was drinking and driving and there were open intoxicants in the car, the police asked him.




Mr. A.M. stated he was not drinking. Defendant Dasgupta-Francis and co-defendant Wallace spoke up and informed officers that they were drinking alcohol and not the driver. Police asked numerous times whether anything illegal such as weapons or drugs was in the car. Co-defendant Wallace and defendant Dasgupta-

Francis repeatedly denied it at first. Finally, defendant Dasgupta-Francis reached into the upper storage compartment—above the rear seat armrest—and pulled out a partially consumed bottle of "Johnny Walker Black" liquor he showed to the officers.








Officers again asked if there were any weapons or drugs in the car, both

defendant and co-defendant denied it. Based upon the open intoxicants, police got all parties out of the vehicle so they could search it. As soon as an officer shined his light into the area vacated by co-defendant Wallace, he stated there were two guns.

Co-defendant Wallace exiting the car



Officer spots guns on the floor near where Co-defendant Wallace sat



Co-defendant Wallace

After the officer noticed the guns, co-defendant Wallace and defendant were

both handcuffed and placed into the back seat of patrol cars.[1] Co-defendant Wallace was placed into the same squad car as the driver, Mr. A.M. (a/k/a "Crave"). Defendant Dasgupta-Francis was placed into a separate squad car by himself. During a search of the Maserati, at the feet of where Wallace sat, officers found: a small baggie containing marijuana, a .40 caliber FNH, Model FNS40C handgun (with a chambered live round) and an inserted magazine containing 14 live rounds;[2] and a .45 caliber, Springfield Armory, Model XD45 handgun (with a chambered live round) and an inserted magazine containing 7 live rounds.







Marijuana

.45 caliber, Springfield Armory, Model XD45 handgun & magazine

FNH. Model FNS40C, .40 caliber handgun & magazine

[1] Upon first exiting the car, the officer asked Co-defendant Wallace if he wanted to sit in the squad car given his apparent foot injury. Defendant refused the accommodation.
[2] Defendant Dasgupta-Francis's palm print was recovered off one side of the FNH magazine.

At the feet area of where defendant Dasgupta-Francis sat, officers also recovered: a Diamondback Firearms, Model DB15, .223 Remington caliber semi-automatic handgun with a double drum magazine (with one chambered live round) containing 11 live rounds; and a Glock, Model 30, .45 ACP caliber handgun (with one live round in the chamber) and an inserted magazine containing 10 live rounds of .45 caliber ammunition. The Glock handgun was at the feet of where defendant Dasgupta-Francis sat but slightly pushed underneath the driver's seat.










**B. Dasgupta-Frances's Criminal History**

Although he is now twenty-five years old, courts have tried and failed to rehabilitate defendant Dasgupta-Francis since he was seventeen years old. Dasgupta-Francis's criminal history reveals that at the age of 17, he had a

conviction in juvenile court for uttering and publishing. (PSR at ¶ 42). On February 24, 2015, he was removed from his family home and placed into Crossroad's for Youth Achievement Center. (*Id.*). On July 22, 2015, he was placed into Oakland County's Children's Village-Boys Treatment Secure Program. While on a pass to go home, he removed a tether and went AWOL. (*Id.*)

Also, at the age of seventeen, and most likely while he was in Crossroad's for Youth Achievement Center, Dasgupta-Francis committed the offense of Malicious Destruction of a Building under $200, on March 24, 2015. Dasgupta-Francis was convicted of the offense and placed on a year of probation. (PSR at ¶ 43). Dasgupta-Francis did not abide by probation conditions and was unsuccessfully discharged from probation.

At nineteen years of age, on June 2, 2017, defendant Dasgupta-Francis committed the offense of armed robbery. He was sentenced to two to fifteen years in the MDOC for that robbery offense. The MDOC website: https://mdocweb.state.mi.us/OTIS2/otis2profile.aspx?mdocNumber=419092 notes that defendant Dasgupta-Francis was paroled (on June 4, 2019) after serving two years. Defendant Dasgupta-Francis was out on parole at the time he committed the instant offense. (PSR at ¶ 44).

Not even a full two years after getting released from prison, on December 8th, 2020, defendant Dasgupta-Francis committed the instant offense. As the

instant crime and his criminal history reveals, Dasgupta-Francis refuses to conform his conduct to stop committing criminal offenses. Pursuant to the terms of the Rule 11, Dasgupta-Francis should be sentenced at the bottom of the determined guidelines range to give the community a much-needed respite from his criminal ways.

## II. Sentencing Guidelines Calculation and Relevant 3553(a) Factors

As an initial matter, the government understands how Probation calculated a guideline range of 57 to 71 months. (PSR ¶ 87). The Supreme Court has noted that, in formulating the Sentencing Guidelines, the U.S. Sentencing Commission's goal is to carry out the objectives of 18 U.S.C. § 3553(a). *United States v. Rita*, 551 U.S. 338, 350 (2007). While advisory, the guidelines remain an important factor in fashioning a just sentence. This is because "it is fair to assume that the Guidelines, insofar as practicable, reflect a rough approximation of sentences that might achieve section 3553(a)'s objectives." *Id.*

Congress has provided, through 18 U.S.C. § 3553(a), the relevant objectives and factors to be considered to impose a sentence "sufficient, but not greater than necessary." Those objectives include: (1) the nature and circumstances of the offense, and the history and characteristics of the defendant; (2) the need for a sentence to reflect the basic aims of sentencing (including retribution, deterrence, incapacitation, and rehabilitation); (3) the kinds of sentences legally available; (4)

the Sentencing Guidelines; (5) Sentencing Commission policy statements; and (6) the need to avoid unwarranted sentencing disparities (nationwide) among defendants with similar records found guilty of similar conduct. But sentencing starts with the calculation of the Guidelines range to promote the sentencing goals of Congress, namely to "provide certainty and fairness in meeting the purposes of sentencing, while avoiding unwarranted sentencing disparities[.]" *United States v. Booker*, 543 U.S. 220, 264 (2005).

Moreover, the guidelines "should be the starting point and the initial benchmark" for choosing a defendant's sentence. *Gall v. United States*, 552 U.S. 38, 49 (2007).

**A. Advisory Guidelines Range**

There is a valid basis for the position taken by Probation about several sentencing enhancements, and their guidelines calculation of 57 to 71 months, and the Government offers the following response to aid the Court in addressing Dasgupta-Francis's overarching objections, and the parties' anticipated total offense level.

i. Possession of Three or More Firearms

Defendant Dasgupta-Francis argues that this offense does not warrant a two-level enhancement for possession of three or more firearms. U.S.S.G.§ 2K2.1(b)(4)(A). "The burden is on the government to prove, by a preponderance

of the evidence, that a particular sentencing enhancement applies." *United States v. Dupree,* 323 F.3d 480, 491 (6th Cir.2003).

Co-defendant Wallace in a phone call with "Tee" said, "[W]e had everything in that b*tch [Maserati vehicle]." Wallace's reference to "[W]e had everything…," indicates joint possession of the four firearms found inside the Maserati. (**See Government's Exhibit 1 and 1A filed in the Sentencing Memorandum for co-defendant Wallace incorporated by reference**). Moreover, co-defendant Wallace tried to get Mr. A.M. (a/k/a "Crave") to take the rap for the guns because he and defendant Dasgupta-Francis were on parole. Possession can be actual or constructive, including joint possession over the same premises or contraband. *United States v. Hall*, 20 F.4th 1085, 1106 (6th Cir. 2022). By a preponderance of the evidence, and based upon his co-defendant's statements indicating joint possession, defendant Dasgupta Francis had actual possession of two of the firearms, the .40 caliber FNH, Model FNS40C handgun, which had his palm print on the magazine, and the Diamondback Firearms, Model DB15, .223 Remington caliber semi-automatic handgun which had a high-capacity dual drum magazine.

An individual has actual possession of a firearm if it "is within the immediate power or control of the individual." *United States v. Walker*, 734 F.3d 451, 455 (6th Cir. 2013) (citations omitted). "To establish actual possession, the

government must prove that the defendant had direct, physical control over the [firearm], and knew that he had control of it." (Sixth Circuit Pattern Criminal Jury Instruction, 2.10A). For example, an individual has actual possession "'where the defendant has physical contact with a firearm–e.g., he holds it, holsters it, or keeps it in a place where it is immediately accessible.'" *United States v. Taylor*, 800 F.3d 701, 709 (6th Cir. 2015) (citations omitted). By a preponderance of the evidence, Defendant Dasgupta-Francis also had actual, constructive, and joint possession of the other two firearms. The Glock, Model 30, .45 ACP caliber handgun, which was directly at his feet but pushed under the driver's seat, and the .45 caliber, Springfield Armory, Model XD45 handgun. The guns near Dasgupta-Francis were in a place immediately accessible to him. By a preponderance of the evidence, the Probation Department correctly applied the two-level enhancement for possession of three or more firearms.

While Probation is technically correct that the enhancement applies, and a preponderance of the evidence backs its application, in fairness, the parties' Rule 11 plea agreement (ECF 36; PageID.118) contemplated a base offense level of 22 for having a semiautomatic firearm capable of accepting a large capacity magazine pursuant to U.S.S.G.§ 2K2.1(a)(3)(A), and a four-level enhancement for an altered serial number pursuant to U.S.S.G.§ 2K2.1(b)(4)(B). The parties anticipated a total offense level of 26 before acceptance of responsibility.

Probation also calculated a total offense level of 26. However, it did so by starting with the base offense level of 22 contemplated by the parties pursuant to U.S.S.G.§ 2K2.1(a)(3)(A). Rather than the lump sum 4 level enhancement contemplated by the parties for an altered firearm pursuant to U.S.S.G.§ 2K2.1(b)(4)(B), Probation added two different two-level enhancements. It added a two-level enhancement for the firearms being stolen pursuant to U.S.S.G.§ 2K2.1(b)(4)(A). It also added a two-level enhancement for there being three or more firearms pursuant to U.S.S.G.§ 2K2.1(b)(1)(A).

It should be noted it was the parties' intention to track each defendant's respective felon-in-possession counts as charged in the first superseding indictment (ECF 28; PageID.81) which held each defendant responsible for only the two guns nearest him. However, in defendant Dasgupta-Francis's case, he was held accountable for the FNH, Model FNS40C handgun that was not near him but bore his palm print on the magazine. Nevertheless, in paragraph 7A, the Rule 11 plainly states that "The Court will determine the defendant's guidelines at sentencing." (ECF 36; PageID.117). Moreover, per the wording of the Rule 11, the guideline provisions the parties' cited are "recommendations." (*Id.*).

As a further indication that the Court is the final arbiter on the guidelines determination and calculation, despite the parties' recommendations, paragraph 7F (*sic*) of the Rule 11 agreement prohibits any party from withdrawing from the

Rule 11 if the Court determines a different guideline range, including one that does not follow the parties' recommendations. (*Id*.).

ii. Altered Serial Number

The Rule 11 agreement contemplated a four-level enhancement for the .40 caliber FNH, Model FNS40C handgun having an altered or obliterated serial number. (ECF 35; PageID.104–105). U.S.S.G.§ 2K2.1(b)(4)(B). In describing, the alteration/damage to the serial number, the Royal Oak Police Report stated, "The FNH FNS 40C has a severely scratched/damaged serial number and the serial number is *believed to be* CSU0002744." (Emphasis added). Obviously, they were uncertain.

In speaking with the ATF Special Agent, who is also an interstate nexus expert and the case agent, he said he was able to determine some portions of the serial number visually but had to determine the other portions, and figure out the true serial number, only through a process of elimination guessing method. In *United States v. Sands*, 948 F.3d. 709, 713–15 (6th Cir. 2020), the Sixth Circuit said, a serial number is "'altered or obliterated' when it is materially changed in a way that makes accurate information less accessible." The Government believes the serial number on the FNH FNS 40C firearm has been altered consistent with the *Sands* opinion and *United States v. Harris*, 720 F.3d. 499, 501 (4th Cir. 2013), which was cited with approval by the Sixth Circuit in *Sands*. The *Harris* Court

stated that if the serial number has been made less legible, then it has been altered. In the case at bar, the Royal Oak Police were uncertain about the serial number and the ATF Special Agent had to perform a process of elimination guess work to determine the full serial number. Thus, the damage made accurate information less accessible. *Sands*, 948 F.3d. at 715. Therefore, the serial number was rendered less legible or altered. *Harris*, 720 F.3d. at 501.

(Photos of the gun's damaged serial number are below).



iii. Stolen Firearms

Although the parties did not include it as a recommendation in the Rule 11, Probation correctly assessed a two-level enhancement because three of the guns were in fact stolen, to wit: the .40 caliber FNH, Model FNS40C handgun, the .45

caliber, Springfield Armory, Model XD45 handgun, and the Diamondback Firearms, Model DB15, .223 Remington caliber semi-automatic handgun. U.S.S.G.§ 2K2.1(b)(4)(A). This is supported by a preponderance of the evidence.

**B. Discrepancy between the Parties and Probation**

According to the Rule 11, with the enhancements included in the plea agreement, the parties anticipated an offense level of 23 after acceptance of responsibility. An offense level of 23 and a criminal history category of III yields an advisory guideline range of 57-71 months of imprisonment. Although it did so by a different method, Probation also anticipates an offense level of 23 after acceptance of responsibility. An offense level of 23 and a criminal history category of III yields an advisory guideline range of 57-71 months. There is no difference in the parties' guideline determination. The parties arrived at the same calculation by the application of different enhancements. If the court applies this same guideline range, then per the terms of the Rule 11, the Government seeks a sentence of 57 months, the bottom of the guideline range.

**C. Section 3553(a) Factors**

In fashioning a just sentence, this Court must consider the Section 3553(a) factors. The government discusses those factors below.

i. Nature and circumstances of the offense

Defendant Dasgupta-Francis committed this offense within two years of being placed on parole. Dasgupta-Francis was paroled on June 4, 2019. On that same date, he signed MDOC form CSJ-290 acknowledging that he is prohibited from possessing a firearm. **(Government's Exhibit 1 incorporated by reference)**. Dasgupta-Francis has shown he is not ready to cease from his recidivist ways. A sentence at the bottom of the determined guidelines range serves to send a message to Dasgupta-Francis that it is time for him to stop being a recidivist.

ii. History and Characteristics of the defendant

In continuing to break the law and possess firearms so soon after parole and in contravention of the MDOC form CSJ-290 he executed; Dasgupta-Francis has demonstrated that he prefers to continue in his criminal ways. Dasgupta-Francis has demonstrated that he still does not care to become a productive and law-abiding citizen. Dasgupta-Francis's prior incarceration and relatively recent parole release did little to deter him from continuing to engage in criminal activity.

Because of his unappreciativeness and continued criminal activity, a lengthier sentence at the bottom of the determined guidelines serves to send a message to Dasgupta-Francis that he must become a productive and law-abiding citizen.

iii. Seriousness of the offense, promotion of respect for the law, and just punishment for the offense

Dasgupta-Francis's offense is a serious one. He was riding around drinking

alcohol and likely using or about to use the marijuana found in the car. The only reason for possessing those loaded firearms is to potentially use them. Inebriation combined with loaded firearms is a dangerous mix. Given his recent release and execution of the MDOC form CSJ-290, Dasgupta-Francis showed no respect for the law when he committed this offense. Given Dasgupta-Francis's contempt for the law, this Court should mitigate the continued criminal risk posed by felons like him and impose a significant sentence. Promotion of respect for the law and just punishment requires a custodial sentence at the bottom of the determined guidelines range.

iv. Adequate deterrence and protection of the public

Deterrence of Dasgupta-Francis, and protection of the public, requires a custodial sentence at the bottom of the determined guidelines range. This Court's sentence must send a message to the public that a criminal defendant's refusal to change his criminal ways will be met with a significant period of incarceration. Dasgupta-Francis needs a sentence that will remove him from the community for a lengthy time and deter him from further criminal conduct. His prior two years of incarceration was not good enough to cause deterrence.

A bottom of the guidelines sentence will prevent Dasgupta-Francis from committing additional criminal activity and send a message to him and the surrounding community that offenses perpetrated by felons in possession of

firearms or ammunition will be met with the commensurate punishment it deserves. If he receives a sufficient bottom of the guideline custodial sentence now, when he leaves federal prison, Dasgupta-Francis will have the sobering realization that his recidivist behavior must finally cease. Also, felons like defendant, and the community at large, will be on notice that they will be fully punished for such criminality.

**Conclusion**

The government recommends a sentence of imprisonment at the bottom of the determined guidelines range.

Respectfully submitted,

DAWN N. ISON
United States Attorney

*s/ Terrence R. Haugabook*

Terrence R. Haugabook
Assistant United States Attorney
211 W. Fort Street, Suite 2001
Detroit, MI 48226
(313) 226-9157
Terrence.Haugabook@usdoj.gov

Dated: March 24, 2023

**CERTIFICATE OF SERVICE**

I hereby certify that on March 24, 2023, I caused the foregoing document to be electronically filed with the Clerk of the Court using the ECF system, which will send notification of such filing to all ECF participants of record.

*s/ Terrence R. Haugabook*
Terrence R. Haugabook
Assistant United States Attorney
211 W. Fort Street, Suite 2001
Detroit, MI 48226
(313) 226-9157
*Terrence.haugabook@usdoj.gov*